IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NORA DEGARMO,

        Plaintiff,

v.                                               CIVIL ACTION NO. 2:12–cv–07578

C. R. BARD, INC.,

        Defendant.

MEMORANDUM OPINION AND ORDER
(*Daubert* Motion re: William Porter, M.D.)

Pending before the court is the Motion to Exclude the Opinions of William Porter, M.D. [ECF No. 20] filed by defendant C. R. Bard, Inc. ("Bard"). The plaintiff has not responded to the Motion, and the time for responding has expired. Thus, the Motion is ripe for adjudication.

I.    BACKGROUND

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 24,000 cases currently pending, approximately 3,000 of which are in the Bard MDL, MDL No. 2187.

In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized basis. To this end, I ordered the plaintiffs and defendants to submit a joint list of

remaining cases in the Bard MDL, MDL 2187, with claims against Bard and other defendants where counsel has at least twenty cases in the Bard MDL. The list included nearly 3000 cases. From these cases, I selected 333 cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 236, *In re C. R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10md-02187, Jan. 27, 2017, https://www.wvsd.uscourts.gov/MDL/2187/orders.html. Upon the creation of a wave, a docket control order subjects each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. I selected the instant civil action as a Wave 4 case.

## II. LEGAL STANDARD

By now, the parties should be intimately familiar with Rule 702 of the Federal Rules of Evidence and *Daubert*, so the court will not linger for long on these standards.

Expert testimony is admissible if the expert is qualified and if his or her expert testimony is reliable and relevant. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). An expert may be qualified to offer expert testimony based on his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Reliability may turn on the consideration of several factors:

> (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592–94). But these factors are neither necessary to nor determinative of reliability in all cases; the inquiry is flexible and puts "principles and methodology" above conclusions and outcomes. *Daubert*, 509 U.S. at 595; *see also Kumho Tire Co. v. Carmichael*, 525 U.S. 137, 141, 150 (1999). Finally, and simply, relevance turns on whether the expert testimony relates to any issues in the case. *See, e.g.*, *Daubert*, 509 U.S. at 591–92 (discussing relevance and helpfulness).

In the context of specific causation expert opinions, the Fourth Circuit has held that "a reliable differential diagnosis provides a valid foundation for an expert opinion." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir. 1999).

> A reliable differential diagnosis typically, though not invariably, is performed after 'physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests,' and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely.

*Id.* at 262 (citations omitted). "A differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation." *Id.* at 265. However, an expert's causation opinions will not be excluded "because he or she has failed to rule out every possible alternative cause of a plaintiff's illness." *Id.* "The alternative causes suggested by a defendant 'affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony,' unless the expert can offer '*no* explanation for why

she has concluded [an alternative cause offered by the opposing party] was not the sole cause.'" *Id.* at 265 (alteration in original) (citations omitted).

At bottom, the court has broad discretion to determine whether expert testimony should be admitted or excluded. *Cooper*, 259 F.3d at 200.

### III. DISCUSSION

#### A. Differential Diagnosis

Bard first argues that Dr. Porter failed to perform a reliable differential diagnosis. I disagree. Dr. Porter is an urogynecologist, who has performed over 3000 pubovaginal sling surgeries and several thousand vaginal repairs for pelvic organ prolapse, including the removal of sling and mesh complication surgeries. Def.'s Mot. to Exclude Ops. of William Porter, M.D., Ex. 1 (Porter Expert Report), at 1-2 [ECF No. 20-1]. Though he did not perform a physical examination of the plaintiff herself, Dr. Porter's expert report and deposition testimony show that he conducted a detailed review of the plaintiff's medical records. In his report, Dr. Porter considered numerous alternative causes for the plaintiff's injuries and concluded that they could not be ruled out as a cause of the plaintiff's injuries. *Id.* at 4. In his deposition, Dr. Porter explained in more detail why he did not believe that these alternative causes were responsible for the plaintiff's injuries, but admitted that he could not rule them out completely. *See* Def.'s Mot. to Exclude Ops. of William Porter, M.D., Ex. 2 (Porter Dep.), at 646:11–649:18 [ECF No. 20-1].

As discussed above, an expert's causation opinions will not be excluded "because he or she has failed to rule out every possible alternative cause of a plaintiff's

4

illness." *Westberry*, 178 F.3d at 265. "The alternative causes suggested by a defendant 'affect the weight that the jury should give the expert's testimony and not the admissibility of that testimony,' unless the expert can offer '*no* explanation for why she has concluded [an alternative cause offered by the opposing party] was not the sole cause.'" *Id.* at 265 (alteration in original) (citations omitted). Here, although Dr. Porter admittedly could not rule out certain alternative causes of the plaintiff's injuries, he was able to articulate why he believed that those alternative causes were "not the sole cause" of the plaintiff's injuries. Thus, to the extent that Bard believes that Dr. Porter failed to consider other alternative causes properly or varied his confidence in his assessments, Bard is free to address those issues on cross-examination. Bard's Motion on this point is **DENIED**.

### B. Design Defect

Next, Bard argues that Dr. Porter's specific causation opinions are unreliable because he acknowledges in his deposition testimony that the plaintiff's alleged injuries could have occurred had she undergone the same procedure with a different polypropylene mesh device. Bard does not cite, and the court could not locate, any authority that mandates a specific causation expert to surmise that an alternative product, comprised of an *identical* material, would have produced different effects. In the absence of any justification for the application of such a limited construct here, Bard's Motion on this point is **DENIED.**

5

### C. Insufficient Facts or Data

Finally, Bard argues that Dr. Porter does not have a sufficient factual basis to opine on whether there was any contraction of the plaintiff's sling in this case. It is not the role of the court to evaluate the veracity of the facts underlying an expert's opinion. *See Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 392-93 (5th Cir. 2002) ("[T]he reliability of data underlying an expert's opinion goes to the weight of this evidence, but should not serve as a basis for its exclusion."). Therefore, Bard's motion on this point is **DENIED**, and any remaining issues are **RESERVED for trial**.

### IV. CONCLUSION

The court **ORDERS** that the Motion to Exclude the Opinions of William Porter, M.D. [ECF No. 20] is **DENIED in part** and **RESERVED in part**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: February 2, 2018

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE