IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NORA DEGARMO,

        Plaintiff,

v.                                                  CIVIL ACTION NO. 2:12–cv–07578

C. R. BARD, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER
(Defendant's Motion for Summary Judgment)

Pending before the court is the Motion for Summary Judgment [ECF No. 18] filed by defendant C. R. Bard, Inc. ("Bard"). The plaintiff has responded [ECF No. 22], and Bard has replied [ECF No. 23]. Thus, the Motion is ripe for adjudication. As set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

## I.  Background

This action involves an Ohio plaintiff who was implanted with the Align Urethral Support System, a mesh product manufactured by Bard, on December 7, 2011 in Columbus, Ohio. Am. Short Form Compl. ¶¶ 1–12 [ECF No. 6]. This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation ("MDL") concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 24,000 cases currently pending, approximately 3000 of which are in the C. R. Bard, Inc. MDL, MDL No. 2187.

In an effort to manage the massive Bard MDL efficiently and effectively, the court decided to conduct pretrial discovery and motions practice on an individualized basis. To this end, I ordered the plaintiffs and defendants to submit a joint list of remaining cases in the Bard MDL, MDL 2187, with claims against Bard and other defendants where counsel has at least twenty cases in the Bard MDL. The list included nearly 3,000 cases. From these cases, I selected 333 cases to become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. *See* Pretrial Order No. 236, *In re C. R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:10–md–02187, Jan. 27, 2017, https://www.wvsd.uscourts.gov/MDL/2187/orders.html. Upon the creation of a wave, a docket control order subjects each active case in the wave to the same scheduling deadlines, rules regarding motion practice, and limitations on discovery. I selected the instant civil action as a Wave 4 case.

## II.    Legal Standards

### A.  Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the moving party may produce an affidavit to demonstrate the absence of a genuine issue of material fact. *See id.* The moving party, however, is not required to do so and may discharge this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *see also Pumphrey v. C.R. Bard, Inc.*, 906 F. Supp. 334, 336 (N.D. W. Va. 1995). If the moving party sufficiently points out to the court those portions of the record that show that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to come forward with record evidence establishing a genuine issue of material fact. *Pollard v. United States*, 166 F. App'x 674, 678 (4th Cir. 2006) (citing *Celotex, Corp.*, 477 U.S. at 325).

Should the burden shift, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Id.* at 252. Likewise, conclusory allegations or unsupported speculations, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v.*

*Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997). Summary judgment is therefore appropriate when, after adequate time for discovery, the moving party first discharges the initial burden and then the nonmoving party does not make a showing sufficient to establish a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322–23.

### B. Choice of Law

The parties agree that Ohio choice-of-law principles apply to this case and that these principles compel the application of Ohio substantive law to the plaintiff's claims.

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citations omitted). If a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as the plaintiff did in this case, the court consults the choice-of-law rules of the state where the plaintiff was implanted with the product. *See Sanchez v. Bos. Sci. Corp.*, 2:12–cv–05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, the court will follow the better-reasoned authority that applies

the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). In this case, the implantation surgery took place in Ohio. Thus, Ohio's choice-of-law principles guide the court's choice-of-law analysis.

Ohio applies the choice-of-law analysis outlined in the Restatement of the Law of Conflicts. *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288 (Ohio 1984). This analysis begins with the presumption "that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Id.* at 289. To determine the state with the most significant relationship, the court must consider the following factors: "(1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; [and] (4) the place where the relationship between the parties, if any, is located[.]" *Id.* "All of these factors are to be evaluated according to their relative importance to the case." *Id.*

Here, the plaintiff resides in Ohio, she was implanted with the product at issue in Ohio, and her alleged injuries and follow-up care occurred in Ohio. Accordingly, I **FIND** that Ohio has the most significant relationship to the lawsuit, and I apply Ohio's substantive law to this case.

III.    Analysis

Bard argues it is entitled to summary judgment on all of the plaintiff's claims because she is unable to establish causation, which is an essential element of all of her claims. In addition, Bard argues it is entitled to summary judgment on the

plaintiff's claims for failure to warn and negligent marketing, labeling, packaging, and selling because there is insufficient evidence to support these claims. Bard also argues it is entitled to summary judgment on the plaintiff's strict liability design defect claim, because such a claim is abrogated by the Ohio Product Liability Act ("OPLA").

## A. Conceded Claims

The plaintiff concedes the following claims: Count III (Strict Liability – Manufacturing Defect); Count V (Breach of Express Warranty); Count VI (Breach of Implied Warranty); and Count VIII (Punitive Damages). Accordingly, Bard's Motion regarding these counts is **GRANTED**.

## B. The Ohio Product Liability Act

The OPLA is Ohio's statutory vehicle for products liability actions. *See Wimbush v. Wyeth*, 619 F.3d 632, 639 (6th Cir. 2010) (applying Ohio law). In an attempt to streamline products liability claims, a 2005 amendment to the OPLA expressly "abrogate[d] all common law product liability claims or causes of action." Ohio Rev. Code § 2307.71(B); *Wimbush*, 619 F.3d at 639. Thus, courts applying Ohio law have consistently dismissed products liability claims sounding in negligence, finding that they are abrogated by the OPLA. *See Jones v. Staübli Motor Sports Div. of Staübli Am. Corp.*, 897 F. Supp. 2d 599, 618 (S.D. Ohio 2012); *Miller v. ALZA Corp.*, 759 F. Supp. 2d 929, 943 (S.D. Ohio 2010). Accordingly, Bard's Motion is **GRANTED** with respect to Count I (Negligence).

Bard argues that it is entitled to summary judgment on the plaintiff's claim for strict liability design defect because this cause of action is not recognized for medical devices under the OPLA. Bard specifically refers to section 2307.75(D), which provides,

> An ethical drug or ethical medical device is not defective in design or formulation because some aspect of it is unavoidably unsafe, if the manufacturer of the ethical drug or ethical medical device provides adequate warning and instruction under section 2307.76 of the Revised Code concerning that unavoidably unsafe aspect.

As the quoted language makes clear, however, the OPLA does recognize a cause of action for defective design for medical devices. This provision simply provides that a medical device is not defective if the manufacturer of the device provides adequate warnings; it does not state that the cause of action is abrogated in its entirety for medical devices. Therefore, Bard's Motion on this point is **DENIED**.

## C. Failure to Warn

Next, Bard argues it is entitled to summary judgment on the plaintiff's strict liability failure to warn claim, because the plaintiff is unable to establish that the allegedly inadequate warnings related to the Bard mesh products proximately caused the plaintiff's alleged injuries. Specifically, Bard notes that the plaintiff chose not to depose her implanting physician, Dr. Frank Begun. Thus, there is no evidence that, had Bard supplied adequate warnings for its products, this would have affected Dr. Begun's decision to prescribe the Align device to the plaintiff.

In order to establish a claim for failure to warn under the OPLA, the plaintiff must establish three elements: "(1) a duty to warn against reasonably foreseeable

risks; (2) breach of this duty; and (3) an injury that is proximately caused by the breach." *Miller*, 759 F. Supp. 2d at 934 (quoting *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 514 (6th Cir. 2003)); *see also* Ohio Rev. Code § 2307.76(A). "With regard to prescription drugs, a manufacturer's duty is discharged 'if the manufacturer adequately warns the patient's doctor of those risks.'" *Miller*, 759 F. Supp. 2d at 934 (quoting *Graham*, 350 F.3d at 514); *see also* Ohio Rev. Code § 2307.76(C).

"A plaintiff 'not only must convince the fact finder that the warning provided is unreasonable, hence inadequate, but he also must establish the existence of proximate cause between the [product] and the fact of the plaintiff's injury.'" *Miller*, 759 F. Supp. 2d at 936 (alteration in original) (quoting *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 450–51 (6th Cir. 2000)). "In analyzing the proximate cause issue as it relates to failure-to-warn cases, the Ohio Supreme Court divided proximate causation . . . into two sub-issues: (1) whether lack of adequate warnings contributed to the plaintiff's [use of the product], and (2) whether [use of the product] constitute[d] a proximate cause of the plaintiff's injury." *Id.* (alterations and ellipsis in original) (internal quotation marks omitted) (quoting *Hisrich*, 226 F.3d at 451).

> In Ohio, "where no warning is given, or where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the failure to adequately warn was a proximate cause of the plaintiff's ingestion of the drug." However, where the evidence demonstrates that "an adequate warning would have made no difference in the physician's decision as to whether to prescribe a drug or as to whether to monitor the patient thereafter, the presumption . . . is rebutted, and the required element of proximate cause between the warning and ingestion of the drug is lacking."

> . . .

> However, where the evidence does not affirmatively establish that the prescribing physician "would not have behaved differently had he received a different warning," a matter of credibility may exist that is "better made by the finder of fact."

*Id.* (citations omitted).

Here, the plaintiff has presented evidence from which a reasonable jury could find that Bard's warnings related to the Align mesh were inadequate. Thus, under Ohio law, the plaintiff is the beneficiary of a rebuttable presumption that the allegedly inadequate warnings were a proximate cause of the plaintiff's alleged injuries. Although the plaintiff has not presented any evidence in support of this presumption, nor has Bard presented evidence sufficient to rebut the presumption conclusively as a matter of law. Thus, "the evidence does not affirmatively establish that the prescribing physician 'would not have behaved differently had he received a different warning.'" *Id.* Therefore, I **FIND** that a genuine dispute of material fact exists regarding whether Bard's allegedly inadequate warnings were the proximate cause of the plaintiff's injuries. Accordingly, Bard's Motion on this point is **DENIED**.

### D. Causation

Finally, Bard argues it is entitled to summary judgment on all of the plaintiff's claims because the plaintiff has not established a causal connection between Bard's product and the plaintiff's alleged injuries. After viewing the evidence submitted by both parties, I **FIND** that a genuine dispute of material fact exists regarding the element of causation. Accordingly, Bard's Motion on this point is **DENIED**.

IV.    Conclusion

For the reasons discussed above, it is **ORDERED** that Bard's Motion for Summary Judgment [ECF No. 18] is **GRANTED** with respect to Count I (Negligence); Count III (Strict Liability – Manufacturing Defect); Count V (Breach of Express Warranty); Count VI (Breach of Implied Warranty); and Count VIII (Punitive Damages), and these claims are **DISMISSED with prejudice**. It is further **ORDERED** that the Motion is **DENIED** with respect to Count II (Strict Liability – Design Defect) and Count IV (Strict Liability – Failure to Warn).

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    February 2, 2018

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE